A judge of the Land Court entered judgment on cross motions for judgment on the pleadings, affirming a decision of the Housing Appeals Committee (HAC). The HAC's decision vacated the Woburn zoning board of appeals's (board) denial of Woburn 38 Development, LLC's (developer) application for modification of a 2006 comprehensive permit issued pursuant to G. L. c. 40B, §§ 20 - 23. The board appeals, arguing that the HAC (i) improperly shifted the burden of proof to the board and (ii) failed to recognize the board's concerns regarding the duration of the construction project and associated noise as a "local concern" that outweighs the need for low income housing. We affirm the judgment.
Background. The project at issue has a long history and was the subject of a 2006 decision pursuant to our rule 1:28 which upheld the HAC's decision to vacate the board's denial of the original application for a comprehensive permit. Board of Appeals of Woburn v. Housing Appeals Comm., 66 Mass. App. Ct. 1109 (2006). Thereafter, the board issued the original comprehensive permit to the developer's predecessor in interest on September 26, 2006, and has twice extended it. In 2011-2012, a new owner, the developer, sought a modification of the comprehensive permit. The proposed modification includes the same number of units, 168, but replaces the proposed single six-story building with four three-story buildings, associated parking, and a clubhouse. It requires nearly double the amount of blasting and ledge removal and extends the duration of the site preparation and construction phase of development from six months to at least a year. Even accepting that the modified project will comply with applicable noise regulations, the HAC noted that construction will be loud and unusually lengthy.[3]
Following a public hearing, the board denied the modification application, finding, among other things, that the twelve months of blasting and gravel removal required for the modification rather than the six months required for the original proposal would interfere with the abutters' "quiet enjoyment of their property," cause unacceptable noise pollution, and adversely affect the public health, welfare, and safety of the direct abutters, as well as the surrounding residential neighborhood. The board concluded that "[a]lthough the design of the modified Project may be more aesthetically pleasing, where the number of affordable units will remain the same, the Board finds that the more extensive construction period associated with the modified Project and the attendant disruptions to abutters and the surrounding residential neighborhood are not mere inconveniences, but create local concerns which outweigh the need for such affordable housing."
The HAC vacated the board's decision, finding that it was not consistent with local needs, and directed the board to permit the requested modification, subject to certain conditions, including that construction comply with all noise and vibration regulations.[4] A judge of the Land Court affirmed.
Discussion. The comprehensive permit act, G. L. c. 40B, §§ 20 - 23 (act), "is designed to facilitate the development of low and moderate income housing in communities throughout the Commonwealth.... [The] 'act was intended to remove various obstacles to the development of affordable housing, including regulatory requirements that had been utilized by local opponents as a means of thwarting such development in their towns.' " Eisai, Inc. v. Housing Appeals Comm., 89 Mass. App. Ct. 604, 608-609 (2016), quoting from Dennis Hous. Corp. v. Zoning Bd. of Appeals of Dennis, 439 Mass. 71, 76 (2003). Review of a local board's decision by HAC "is limited to the issue whether 'the decision of the board of appeals was reasonable and consistent with local needs.' " Eisai, 89 Mass. App. Ct. at 609, quoting from Zoning Bd. of Appeals of Holliston v. Housing Appeals Comm., 80 Mass. App. Ct. 406, 414 (2011). Appeal of the HAC's decision is in accordance with G. L. c. 30A, and the "reviewing judge considers whether the HAC's decision was arbitrary, capricious, lacking substantial evidence, or otherwise contrary to the law, and whether the substantial rights of any party have been prejudiced." Eisai, 89 Mass. App. Ct. at 610.
In support of its contention that the HAC erred in overturning the board's decision, the board makes two related arguments and we confine our review to those arguments. The board first contends that the HAC failed to comply with its pretrial order, which placed the burden on the developer to establish a prima facie case that "the blasting and earth removal operations" will comply "with federal or state statutes or regulations or with generally recognized standards" "relating to noise and dust and vibrations."[5] Focusing only on noise-related issues, the board contends the HAC impermissibly shifted to the board the burden of proof on this issue. We disagree.
In the case of a denial, the developer's burden in establishing a prima facie case is to show that "its proposal complies with federal or state statutes or regulations, or with generally recognized standards as to matters of health, safety, the environment, design, open space, or other matters of Local Concern." 760 Code Mass. Regs. § 56.07(2)(a)(2) (2012). It is true, however, that the HAC's decision in this case suggests that in reviewing a modification decision, as compared to an outright denial of a project, the burden should not have been placed on the developer to prove that its proposal complies with State or Federal standards. What the board ignores, however, is that the HAC did not end its decision regarding noise impacts there. Rather, the HAC expressly found that "even if the burden were on the developer, the extensive evidence presented by the developer with regard to noise is clearly sufficient to establish a prima facie case." As such, the board's argument that the HAC failed to comply with its pretrial order and misplaced the burden of proof is unavailing.
Assuming the developer was required to establish a prima facie case, it did so. The developer presented expert evidence that the project will comply with all applicable noise requirements. Despite the blasting and earth removal required for this project, the developer did not seek a waiver of any Federal, State, or local regulation related to noise. The HAC specifically found that "[c]onstruction of the development will not go forward unless it is in compliance" with all noise requirements, and, in fact, made the comprehensive permit subject to a condition that construction comply with all Massachusetts, Federal, and local noise and vibration regulations and requirements. In addition, the comprehensive permit provides that "[l]ocal officials and residents may take whatever actions are normally taken to ensure enforcement of such requirements."
In Zoning Bd. of Appeals of Holliston v. Housing Appeals Comm., 80 Mass. App. Ct. 406 (2011), we held that even where plans were incomplete, a developer that proposed to modify its plans to comply with State and Federal statutes or regulations had established a prima facie case.[6] Id. at 416. Accordingly, where the developer here plans to comply with all applicable noise regulations, we similarly conclude the HAC did not err in finding that the developer had established a prima facie case.[7]
Furthermore, we also noted in Holliston that "[i]t has long been held that it is unreasonable for a board to withhold approval of an application for a comprehensive permit when it could condition approval on the tendering of a suitable plan that would comply with State standards." Ibid.
After noting that the project will comply with all Federal and State noise requirements, the HAC said that "local officials may-and certainly should-take any [enforcement] action that they would normally take to enforce the Woburn noise ordinance. This is particularly important because it is clear from the expert testimony that predicting sound levels in advance is difficult. This construction project will be loud and unusually lengthy, and the impact that it will inevitably have on abutters must be minimized." The HAC noted that in addition to mitigation measures incorporated into the plan, other measures are available if needed and State and local officials may require additional safeguards should the experts' noise estimates be incorrect. Where the developer here submitted a proposal which purports to comply with all applicable noise regulations, the HAC has also imposed conditions that construction comply in fact with all applicable noise and vibration regulations, and there is no applicable requirement related to duration of construction, we discern no error in the HAC's focus on enforcement.[8]
The board's second but related argument is that even if the project will comply with the local by-law and State and Federal noise regulations, it still has raised a "local concern" "with respect to the overall volume and duration of noise pollution the Project will inevitably generate, and its deleterious effects on the immediate neighbors, several of whom are particularly sensitive to noise." No existing local regulation or "generally recognized standard" controls duration of noisy construction projects that do not exceed the ten decibels above background noise limitation, but the board insists that should not matter. "The board's power to disapprove a comprehensive permit, like its power to impose conditions in issuing a comprehensive permit, Zoning Bd. of Appeals of Amesbury v. Housing Appeals Comm., 457 Mass. [748,] 755-756 [2010], is limited to the scope of concern of the various local boards in whose stead the local zoning board acts." Holliston, 80 Mass. App. Ct. at 417-418. Where the board has not shown that a local board may reject a construction plan that complies with all noise regulations based simply on the duration of the project and its associated noise, the HAC did not err in declining to conclude that the board had identified a local concern that outweighs the need for low income housing.
The regulations provide a list of "factual areas of Local Concern," which, although expressly not intended to be "all inclusive," casts some doubt as to whether concerns regarding construction-related noise that does not violate local noise regulations may constitute a "local concern" that outweighs the need for low income housing. See 760 Code Mass. Regs. § 56.07(3)(d)-(g) (2008) (local concerns include structural soundness of proposed buildings, adequacy of sewage, adequacy of water drainage, adequacy of fire protection, traffic within the site and adjacent streets, proximity to activities which may affect the health and safety of the occupants of the proposed housing, site and building design, open space in the municipality, and relationship to master plan). These "local concerns" bear on completed projects. None of the enumerated concerns touch on issues surrounding noise or disruption during the construction phase of the development. Where the board points to no durational limitation on construction projects or the noise produced by them, particularly noise that does not violate the local by-law's limits, the board has not identified an interest of local concern over which local boards would have jurisdiction. Even if it had, given "the rebuttable presumption that there exists a substantial regional housing need that outweighs local concerns where, as here, the town has not achieved the ten percent minimum stock of affordable housing," Holliston, 80 Mass. App. Ct. at 417, the HAC's focus on enforcement is particularly well placed.
Judgment affirmed.

The parties agree that local and State requirements are the same: sound that increases noise levels by ten decibels over ambient levels are prohibited. See 310 Code Mass. Regs. § 7.10 (2002) ; Department of Environmental Quality Engineering Division of Air Quality Control Policy 90-001 (Feb. 1, 1990). The HAC found that both parties' experts agreed that the local requirement is the same as the State requirement. While it appears that definitions in the State regulations reference the duration of sound as a contributor to air pollution, neither party cites to any regulation that purports to regulate the duration of sound or the duration of projects which produce sound.

The HAC found that both the original and the modified projects are uneconomic but found that the original proposal is 1.66 percent more uneconomic and, therefore, the developer met its burden of proving the denial made the project uneconomic. On appeal to this court, the board does not argue that the HAC erred on this issue and we do not address it.

Before the HAC and before this court, the board makes no argument with regard to dust and vibrations.

Admittedly, in Holliston, wetlands were at issue and the plans would be reviewed by the conservation commission and the Department of Environmental Protection. 80 Mass. App. Ct. at 416. The claim here, however, is not that the plans are incomplete and will evade review, but that the project cannot be constructed without violating the noise regulations. If that turns out to be true, the developer will, as it concedes, bear the risk that the project cannot go forward.

"Once the developer established its prima facie case [consistent with the pretrial order,] the burden shifted to the board to prove 'first, that there is a valid health, safety, environmental, design, open space, or other Local Concern which supports such denial, and then, that such Local Concern outweighs the Housing Need.' " Eisai, 89 Mass. App. Ct. at 611, quoting from 760 Code Mass. Regs. § 56.07(2)(b)(2) (2008).

Should the developer's expert be wrong with regard to the level of noise the project will produce, the city of Woburn and abutters may and should (as noted by HAC) enforce the developer's promises and the condition in the comprehensive permit that construction must comply with all applicable noise and vibration regulations.